# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

In the Matter of:

MARVIN ROSS-TOUSEY and
DEBORAH TOUSEY,

        Debtors,

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM T. NEARY,
United States Trustee,

        Appellant,

  v.                                                                Case No. 07-C-65

MARVIN F. ROSS-TOUSEY and
DEBORAH H. TOUSEY,

        Appellees.

## DECISION AND ORDER

      In this bankruptcy appeal, the United States Trustee appeals a decision of the bankruptcy court denying the Trustee's motion to dismiss the case for abuse, pursuant to 11 U.S.C. § 707(b)(1). The Trustee argues that the bankruptcy court erred in allowing the debtors, in calculating their current monthly income, to deduct an "automobile ownership expense" despite the fact that the debtors did not finance their cars and thus had no "ownership expense." The Trustee also argues that even if the bankruptcy court was correct in its analysis of that issue, the court erred in failing to dismiss the case for abuse given the totality of the circumstances. For the reasons set forth below, the judgment of the bankruptcy court will be reversed.

**ANALYSIS**

**I. Section 707(b)(2)'s Means Test**

One of the centerpieces of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was the introduction of a means test to distinguish between those debtors who could afford to repay a portion of their debt and those who could not. Under BAPCPA, if the debtor has sufficient disposable income to repay his unsecured creditors at least $166.67 per month ($10,000 over five years), he is steered towards Chapter 13 and must partly repay his debts. 11 U.S.C. § 707(b)(2)(A)(i)(II). Chapter 7 relief, which allows for the complete discharge of debt, is now presumptively considered an "abuse" if the debtor is able to pass the means test. *See generally,* Eugene Wedoff, *Means Testing in the New Section 707(B),* Am. Bankr. L. J. 231 (Spring 2005).

The means test uses an objective formula to determine a debtor's ability to pay. As applicable here, the means test starts with the debtor's current monthly income ("CMI") and reduces that number by certain allowable monthly expenses set forth in 11 U.S.C. § 707(b)(2)(A)(ii)-(iv). These include expenses for such things as supporting elderly or ill family members, health insurance, paying for a child's education, and the like. As relevant here, the statute also allows deductions of the broader category of expenses provided in § 707(b)(2)(A)(ii)(I):

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . .

The Standards referred to are those used by the IRS to determine a taxpayer's ability to pay delinquent tax. These Standards allow a taxpayer to deduct an operating expense as well as an

2

expense incurred due to the cost of leasing or purchasing a vehicle. *In re Howell,* 2007 WL 1237832, *2 (Bkrtcy. D. Kan. 2007).

The debtors in this case were both long-term employees of the Mohican North Star Casino. In their Chapter 7 application, they reduced their current monthly income by $358 for "transportation vehicle operation" expenses. They also took deductions of $471 and $332 (nationally standard amounts) for "transportation ownership / lease expenses" for their two cars, even though they owned the cars free and clear and thus did not have any actual monthly expenses associated with car ownership (e.g., leases or loans). With these ownership expenses subtracted from their current monthly income, the debtors "failed" the means test and were allowed relief under Chapter 7.

**II. Analysis**

At its core, the question is whether a debtor who has no "actual" monthly car payments – because he paid cash (or paid off) his car – may nevertheless receive credit for the automobile ownership expense. As all parties to this action have recognized from the outset, the issue presented has produced a split among the many bankruptcy courts that have considered it. *See In re Enright,* 2007 WL 748432 (Bkrtcy. M.D.N.C., March 6, 2007) (collecting cases). The question has also split scholarly commentators. Professor Gary Neustadter argues that the deduction should not be allowed: "a debtor who, at the time of the petition, owns free and clear an older vehicle possibly soon in need of replacement, or a debtor who, at the time of the petition, doesn't own a vehicle but needs to purchase one soon, may not claim any transportation ownership expense as part of the presumed monthly expenses." Gary Neustadter, *2005: A Consumer Bankruptcy Odyssey,* 39 Creighton L. Rev. 225, 295 (2006). In contrast, Bankruptcy Judge Wedoff argues that "since the

3

Case 1:07-cv-00065-WCG   Filed 05/21/07   Page 3 of 12   Document 9

means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments." Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 257-58 (2005). Under this "fixed allowance" view, the ownership expense deduction is allowed simply because the debtor owns a car.

**1. "Applicable" Means Ownership Expenses Must Exist**

The bankruptcy court allowed the deductions based on the rationale set forth in an earlier case before that court, *In re Grunert,* 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006). That decision, like others allowing similar debtors to take the automobile expense deduction, relies on a limited definition of the word "applicable." To repeat, the statute reads:

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I) (italics added). *Grunert* and other courts perceive a salient contrast between the statute's use of the terms "actual" and "applicable." As one court put it:

> the use of the word "applicable" in the first clause with regard to some expenses (which include both housing and transportation ownership), and the use of the word "actual" with regard to "Other Necessary Expenses", indicates Congressional intent to distinguish between the two classes of expenses, and to allow debtors to use the deductions found in the Local Standards for the first category. A debtor's actual expenses are only relevant with respect to expenses that fall into the "Other Necessary Expenses" category.

*In re Swan,* 2007 WL 1146485, *5 (Bkrtcy. N.D. Cal. 2007).

4

These courts reason that because the statute does not require reference to the debtor's "actual" expenses in calculating some monthly expenses, it does not matter whether such expenses are "actually" incurred or not. As Judge Wedoff put it, the auto ownership expenses are fixed allowances without any connection to whether the payments are actually made or not. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 257-58. Under this line of reasoning, it does not matter that the debtors in this case did not make any car payments – they were allowed the ownership expense deduction simply because they owned two cars.

Although this analysis has been adopted by several courts, I am not persuaded that Congress intended the distinction between "applicable" and "actual" to be so trenchant. It is easy to conclude that the statute's use of the term "actual" means that the expenses so described are to reflect the true (actual) state of the debtor's expenses. It also follows, certainly, that the statute's use of the term "applicable" suggests that the legislature intended it to have a meaning other than "actual." They are not the same. But though it is reasonable to conclude that "actual" and "applicable" have different meanings, that does not mean that Congress, by using two different adjectives, meant that the two terms must have essentially *opposite* meanings.

Instead of viewing "applicable" and "actual" as having virtually opposite meanings, another reading of the statute would allow a debtor to deduct the auto expense listed in the Standards *if* the debtor actually had an auto expense in the first place. This reading gives meaning to the distinction between "applicable" and "actual" without taking a further step to conclude that "applicable" means "nonexistent" or "fictional." Under this reading, it is true that the debtor's "actual" expense does not control the *amount* of the deduction, but the debtor must still have *some* expense in the first place before the Standard amount becomes "applicable." The term "applicable" merely means, in

5

this context, that when a debtor has an automobile ownership expense, his deduction is not based on that actual expense but on the applicable expenses listed in the Standards. As another court has recently concluded, "[i]f a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor." *In re Howell* 2007 WL 1237832, *3. Put another way,

> Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards, it would have written 707(b)(2)(A)(ii)(I) to read, "The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards ..." rather than "The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National and Local Standards ..." (Emphasis added).

*In re Slusher,* 2007 WL 118009, *13 (Bkrtcy. D. Nev., January 17, 2007).

This reading – requiring an "actual" payment to be made before the expense becomes "applicable" – does not improperly equate the two terms, as some courts seem to believe. It merely recognizes that the two terms are applied in different contexts. For some expenses, the statute allows debtors to take their exact (actual) deductions. For other expenses, such as car ownership expenses, the statute's fixed deduction simply treats all debtors who make car payments the same. In other words, the statute allows debtors to itemize certain of their expenses with particularity, but it does not care whether a debtor drives a Mercedes or a Mercury. This reading gives meaning to the important distinction between "applicable" and "actual" without taking the further, unwarranted, step of concluding that the expense may be applicable even though it does not even exist.

Just as I do not find the distinction between "applicable" and "actual" to be dispositive, I do not find anything inherent in the definition of "applicable" that suggests that the ownership deduction may be taken in this case. Several courts read "applicable" in the limited sense that calculating the proper deduction is just a matter of applying the right Standard amounts based solely

6

on how many cars a debtor owns and where the debtor lives. *See, e.g., In re Enright,* 2007 WL 748432, *6 (Bkrtcy. M.D.N.C. 2007). For instance, the debtor must merely consult the Local Standards to calculate his operating expenses based on the "applicable" region in which he lives. Ownership expenses are even easier: the debtor merely must determine the number of cars he owns and deduct the "applicable" number. (The national figure (as applied in this case) is $471 for the first car and $332 for the second.)

But if it is really that simple, the statute would not seem to achieve its purpose. Congress has deemed transportation and car ownership to be among the necessities of life that a debtor is entitled to fund before he must pay back his creditors. Thus, the statute excludes these amounts from the monthly pot of money that the creditors can get their hands on. What's important, therefore, is not *how many* cars a debtor owns, but how many cars he makes *payments* on every month – it is only the *payments* that affect the debtor's ability to repay his creditors. The statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor *already* owns the car, the debtor is adequately protected. Section 707(b)(2)(A)(ii)(I) only achieves the statute's goal of protecting debtors' ability to fund the necessities of life when the debtor is actually shouldering a monthly auto expense. When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from creditors.

Analogy may be made to the tax code. On the familiar 1040 form, the taxpayer is allowed a standardized exemption ($3,300 in 2006) for each of his dependents. For obvious reasons, Congress and the IRS have chosen to standardize the amount allowed rather than inquiring as to what a taxpayer's "actual" expenses are. But even though the *amount* of the exemption is not based on one's "actual" expenses, the exemption is only available if a taxpayer does incur actual expenses

7

in the first place. Before an exemption is allowed, the IRS requires that the children (and others) must qualify as dependents, which means they must (a) live with the taxpayer for at least half of the year, and (b) not provide more than half of their own support during the year. 26 U.S.C. § 152(c). This ensures that the taxpayer has actually incurred real expenses during the tax year by providing shelter and other support to the individual claimed. Thus, the exemption is not simply based on the number of children one has, it is based on the number of children and others one has made supporting *payments* for during the tax year. Even though the exemption is a fixed amount, it is still premised on the taxpayer incurring actual expenses during the year.

The same is true here. Just as it would not make sense to allow tax exemptions based solely on the number of children a taxpayer has, it makes little sense to allow an ownership allowance based solely on the number of cars one owns. Instead, both the tax code and the bankruptcy code are concerned with exempting a certain pool of money (whether from the government or creditors) based on exemptible expenses the individual *actually* incurs. The fact that both schemes employ standardized amounts in some cases does not change this fact.

Finally, I note that disallowing the deduction in this case meets with BAPCPA's goal of requiring creditors to be repaid when possible. As another court has put it:

> denying debtors the ownership allowance when they have no ownership expense (i.e. loan or lease payments) is entirely consistent with one of the apparent objectives of BAPCPA: to ensure that debtors actually pay what they are capable of paying to unsecured creditors. Allowing debtors to deduct from their disposable income a fictional ownership allowance would give debtors with unencumbered vehicles a windfall at the expense of their unsecured creditors.

*In re Howell,* 2007 WL 1237832, *3.

Thus, for all of these reasons, in my view the term "applicable" does not simply mean a debtor must only apply the Standard based on the number of cars he owns; he must apply the

8

Standard based on how many cars for which he has monthly ownership *expenses*. The fact that Congress has chosen to standardize the amount allowed for ownership expenses does not mean it also chose to make the Standards into fixed allowances guaranteed to every car owner.

**2. Requiring an Actual Auto Payment is not Unfair**

A principal objection to the approach I adopt is that it would lead to unfair or arbitrary results. For example, the individual who makes his forty-eighth and final car payment two months before the cutoff would be penalized for no longer having an auto ownership expense (he could no longer deduct the payment from his CMI), whereas the debtor with only one payment to go would be rewarded because he still had a monthly expense, albeit a fleeting one. Because there is little reason to distinguish between the two debtors in this example, the calculation produces a somewhat unsatisfactory result.

It is also arguably unfair (or at least unwise) to "punish" debtors who chose to drive inexpensive automobiles they own rather than borrow money to purchase more expensive cars. As another court noted in determining whether one's "actual" home ownership expenses were deductible, "[t]he irony of this case is that the debtors must make larger plan payments because they moved into a too-small home in a valiant and commendable effort to pay their creditors." *In re Rezentes,* 2007 WL 988055, *7 (Bkrtcy. D.Hawai'i 2007). And, given the limitations of a typical car's lifespan, there is something artificial about considering only *monthly* ownership payments: while the debtor who owns his car free and clear may incur no "monthly" ownership payments, the debtor nevertheless can be expected to incur upkeep and replacement expenses tied to his ongoing ownership of an automobile. This concern seems to underlie Judge Wedoff's conclusion that expenses may be counted even when not incurred:

9

> This approach [allowing car owners to count an ownership expense] reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

79 Am. Bankr. L.J. at 258.

Although these criticisms are well-taken, they do not persuade me that the ownership expense should be allowed when the debtor incurs no such expense. First, though unfairness may sometimes result from the approach I have adopted, it seems unreasonable to expect that the complex and individualized issues involving a debtor's finances are meant to be addressed through an objective and standardized system like the means test. As Professor Neustadter argues:

> Assuming that many debtors without a vehicle payment might reasonably need to replace a vehicle within five years of filing a petition, some allowance for transportation ownership expense in the means-test calculation would seem appropriate. But given the language of the IRS Standards quoted above, the difficulty of predicting when the debtor may need to purchase a vehicle, and the difficulty of predicting the amount of the monthly payments, I do not think the means test can be so read.

39 Creighton L. Rev. 295 n.250. Congress has chosen to employ an objective framework rather than authorizing courts to delve into much detail about the condition of debtors' automobiles and the number of payments remaining. Thus, if unfairness sometimes results, recourse is to the legislature rather than through judicial statutory interpretation.

Moreover, I note that debtors do not have a monopoly on claims of perceived arbitrariness. For instance, if the debtors had their way, they would be allowed the deduction merely because they owned two automobiles, a result their creditors might well find arbitrary. The debtors' situation in this case exemplifies the point. The debtors own a number of cars, including a '69 Chevy truck and

10

an '85 Oldsmobile. One or more of their cars are parked in the debtors' backyard and do not run. These examples prove the point that there is nothing particularly meaningful (as far as the Bankruptcy Code is concerned) about the mere fact that a debtor owns something that happens to qualify as an automobile. In other words, no one would argue that it makes sense to link a debtor's ability to qualify under Chapter 7 to the fact that the debtor happens to have a car rusting away in his backyard. Yet under the debtors' reading of the statute, any of his cars (whether in running condition, parked in the backyard, etc.) would suffice to trigger the ownership expense allowance simply because it is an "automobile" and they "own" it. There is no requirement that the debtors actually need the car in their daily life to drive to work or to the store – in fact, under the debtors' view there is no requirement that the car actually be in working condition.[1] Thus, tying the deduction merely to the number of cars a debtor owns rather than the number he makes *payments* for can lead to arbitrary results not in accordance with the purposes of BAPCPA. Instead, it seems preferable (and less arbitrary) to condition the deduction to ownership *expenses* such as lease or debt payments. Doing so ensures that the car is more likely to be *used* by the debtor in his everyday life, which means that such expenses are exactly the sort of expenses that should trigger an allowance to protect the debtor's continued ownership of the car.[2]

---

[1] The deduction is limited to two cars, and so I do not mean to imply that the debtors in this case were attempting to claim an expense for any cars they do not actually drive in their daily life.

[2] In addition, the Trustee allowed the debtors in this case an additional $400 per month in operational expenses to be exempted due to the age of their cars. The allowance of this additional amount mitigates the debtors' claim that they actually incur substantial additional expenses due to their cars' age and mileage.

11

**III. Conclusion**

I conclude that the bankruptcy court erred in allowing the debtors to deduct automobile ownership expenses for automobiles on which they did not make monthly payments. Because the presumption of abuse arises under 11 U.S.C. § 707(b)(2) when such deductions are not allowed, the bankruptcy court erred in denying the Trustee's motion to dismiss without finding that the presumption was rebutted. The case will be remanded to that court for further proceedings.

**SO ORDERED** this   21st   day of May, 2007.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge